UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| Mark D. McCullaugh, Sr., et al., | ) | CASE NO.: 5:07CV2341 |
| | ) | |
| Plaintiffs, | ) | JUDGE JOHN ADAMS |
| | ) | |
| | ) | |
| | ) | |
| Stephen Krendick, et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | (Resolves Docs. 249, 251, 254) |
| | ) | |

This matter appears before the Court on numerous motions filed by the parties.  On September 2, 2009, Plaintiffs moved to quash three subpoenas directed at non-parties to this litigation.  Doc. 249.  On September 3, 2009, Defendant Stephen Krendick moved to stay these proceedings pending the conclusion of a U.S. Department of Justice investigation.  Doc. 251.  On that same day, Defendants Brett Hadley, Dominic Martucci, Mark Mayer, and Brian Polinger moved to stay the matter on the same grounds.   Doc. 254.   On September 8, 2009, this Court held a telephone conference to discuss the pending motions.   The Court now resolves the motions.

**I.      Motion to Quash**

The motion to quash is DENIED.   During the conference, defense counsel indicated that two of the persons subpoenaed have responded that they have no documents responsive to the request.   Accordingly, the motion to quash is, in part, moot.  With respect to the remaining non-party, the Court finds that Plaintiffs lack standing to move to quash the subpoena.

In the absence of a claim of privilege, proprietary interest, or personal interest, a

party has no standing to quash a subpoena directed at a non-party. *Donahoo v. Ohio Dept. of Youth Servs.*, 211 F.R.D. 303, 306 (N.D.Ohio 2002) ("the party to whom the subpoena is directed is the only party with standing to oppose it"); *City of Ecorse v. U.S. Steel*, 2007 WL 4239263, at *2 (E.D.Mich. Dec. 3, 2007) (analyzing a motion to quash in the context of Fed.R.Civ.P. 45(c)(3)).

*White Mule Co. v. ATC Leasing Co., LLC,* Case No. 3:07CV57, 2008 WL 2680273, at *4 (N.D.Ohio June 25, 2008). Plaintiffs have not argued that they have any interest, personal or otherwise, in the documents sought by the subpoenas.   Accordingly, they lack standing to move to quash them.   The motion is DENIED.

## II.    Motions to Stay

The individual deputies have all moved to stay this matter pending the resolution of an investigation by the U.S. Department of Justice.   The motions are DENIED.

This Court's decision whether or not to stay civil litigation in deference to parallel criminal proceedings is discretionary.  *Acton Corp. v. Borden, Inc.*, 670 F.2d 377, 380 (1st Cir. 1982). Further, "the granting of a stay of civil proceedings due to pending criminal investigation is an extraordinary remedy, not to be granted lightly."  *In re Who's Who Worldwide Registry, Inc.*, 197 B.R. 193, 195 (Bankr.E.D.N.Y.1996).   A colleague in the Eastern District of Tennessee has recently laid out the applicable test for these pending motions.

> When a party to a civil action is subject to criminal proceedings and/or investigations that relate to such civil action, courts will often stay the civil proceeding so as to prevent the use of civil discovery and evidentiary procedures to obtain evidence for use in the criminal matter. Courts will also stay a civil case to preserve a witness' Fifth Amendment privilege rights. *Turley*, 2002 U.S. Dist. Lexis 16964 at * 5 citing *U.S. v. Certain Real Prop. and Premises Known as 1344 Ridge Rd., Laurel Hollow, Syosset, N.Y.*, 751 F.Supp. 1060, 1062 (E.D.N.Y.1989) (stating "the noncriminal proceeding, if not deferred, might undermine the party's Fifth Amendment privilege against self-incrimination, expand rights of criminal discovery beyond the limits of Federal Rule of Criminal Procedure 16(b), expose the basis of the defense to the prosecution in advance of criminal trial, or otherwise prejudice the case.").

Courts make the determination to stay proceedings "in light of the particular

circumstances of the case." "In deciding whether or not to grant a stay, courts must balance the right of the civil litigant to a reasonably prompt determination of his claims with the public interest in law enforcement." "While unquestionably a civil plaintiff has a right to an expeditious resolution of her claims, that right may be trumped by instituting a stay to allow a criminal investigation to proceed."

The similarity of the issues underlying the civil and criminal actions is considered the most important threshold issue in determining whether or not to grant a stay. Absent an overlap of facts and/or issues, there is no danger of self-incrimination, prejudice or need for a stay.

Accordingly, the "existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay."  Absent this required nexus, a myriad of tangible factors may "favor the issuance of a stay, including the protection of a party's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense." The factors that a court should consider in determining whether to grant or extend a stay include:

1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the criminal case, including whether the defendants have been indicted; 3) the private interests of the plaintiffs in proceeding expeditiously, weighed against the prejudice to the plaintiffs caused by the delay; 4) the private interests of, and burden on, the defendants; 5) the interests of the courts; and 6) the public interest.

*Eastwood v. U.S.*, Case No. 2:06CV164, 2008 WL 5412857, at *1-2 (E.D.Tenn. Nov. 14, 2008) (internal citations omitted).

The deputies primarily focus upon the alleged affect on their Fifth Amendment rights. The Court, however, will review the totality of the circumstances.

First, there is no question that there is a significant overlap between the alleged criminal investigation and the civil action.  They arise from the same set of facts and indeed those same facts generated state criminal proceedings against the defendant deputies.

The Court notes that it previously stayed these proceedings pending resolution of the state court criminal proceedings.  Unlike the alleged federal investigation, the state court proceedings were ongoing at the time this Court issued its stay.  The deputies had been indicted and trial dates

had been set.   Contrary to those facts, there is no indication that indictments are forthcoming from the federal investigation, nor is there any known timeline for the completion of that investigation.

Defendants contend that "[t]here are no conceivable interests of the Plaintiffs to proceed expeditiously other than to receive remuneration, if any, sooner than later."   Defendants ignore the fact that Mark McCullaugh died while in their custody.   Regardless of the strength of the parent-child relationship between the decedent and his parents at the time of his death, parents still lost their child.   To say that they have no interest in litigation that may resolve lingering questions surrounding the cause of his death is to ignore reality.   Plaintiffs have a strong personal interest in learning all of the facts surrounding the death of their son, regardless of what those facts may ultimately demonstrate.

While contending that Plaintiffs have no interest other than seeking money, the deputies argue that they have a significant private interest.   That private interest appears to be framed as the deputies desire not to be exposed to a monetary judgment that may lead to personal bankruptcy. The Court finds it curious that the deputies contend that the Plaintiffs' right to receive a monetary judgment is inconsequential, while contending that their exposure to such a judgment is "an extreme private interest."   The Court declines to find that the deputies' private interest outweighs the interests of Plaintiffs.

Finally, the focal point of the deputies' argument revolves around the Fifth Amendment. The deputies contend that they will be significantly disadvantaged at trial because they will be unable to testify in their own defense because of the looming investigation.   Such an argument would hold much more weight had it been timely made.   By their own admission, the deputies were aware of the federal investigation in April of this year.   The pending motions to stay, however, were not filed for more than four months.   The motions were filed after the close of

discovery, well after the deputies claimed the Fifth Amendment during depositions, and on the eve
of the deadline for dispositive motion practice.

This latter fact is significant.   The deputies seem to contend that if this Court were to stay
this litigation pending resolution of the federal investigation, then they would be free to testify in
this matter.   However, this Court has previously indicated that discovery will not be reopened in
this matter.   As such, a stay in this matter would not aid the deputies' abilities to testify.   They
chose to take the Fifth Amendment during deposition practice.   They could have filed this same
motion to stay months ago, while fact discovery was still ongoing.   They chose not to do so.
Accordingly, regardless of the issuance of a stay, the deputies will likely be unable to testify at
trial. As such, this Court affords little weight to the deputies' argument on this issue.

Additionally, the Court notes that there is no foreseeable ending date for the stay sought by
the deputies.   The federal government has not announced any deadlines for conducting its
investigation.   In the event that charges are filed, the trial could be well over a year from now, and
appeals would stretch that period even further.   In addition, it is the Court's understanding that
state charges could still be re-initiated against all of the deputies other than Krendick.   As such,
the Court is not inclined to issue an open-ended stay.

Finally, the Court notes that there is a significant public interest involving this matter.   It is
undisputed that Mark McCullaugh died while in the custody of Summit County.   The public has a
significant interest in learning the facts surrounding this death, the procedures utilized that did or
did not result in the death, and whether the officers committed misconduct.   The motions to stay
are DENIED.   IT IS SO ORDERED.

September 9, 2009                        /s/ John R. Adams
                                         JUDGE JOHN R. ADAMS
                                         UNITED STATES DISTRICT JUDGE